UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JEFFREY EDWARDS,

       Plaintiff,

   -against-

THE TOWN OF HUNTINGTON, THE TOWN OF
HUNTINGTON DEPARTMENT OF GENERAL
SERVICES, BOB PECKHAM (in his Official and
Individual Capacity), and RICHARD SMOSKY (in his
Official and Individual Capacity),

       Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

05-CV-339 (NGG) (AKT)

NICHOLAS G. GARAUFIS, District Judge.

   Plaintiff Jeffrey Edwards alleges that Defendants, who include his employer and two of

his supervisors, discriminated against him on the basis of his race by failing to promote him and

subjecting him to a hostile work environment and, after he reported this discrimination, by

retaliating against him.  Edwards claims that Defendants violated Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); New York State's Human Rights Law,

N.Y. Exec. L. § 290, *et seq.* ("Human Rights Law"); and 42 U.S.C. §§ 1981 and 1983.

   Defendants have moved for summary judgment.  I referred their motions to the Honorable

A. Kathleen Tomlinson, United States Magistrate Judge, for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).  (Order dated August 23, 2006.)

Judge Tomlinson recommends that this court (1) dismiss in part and decline to dismiss in part

claims based on the alleged failure to promote, (2) decline to dismiss claims based on the

1

allegedly hostile work environment, (3) dismiss in part and decline to dismiss in part claims based on alleged retaliation, (4) dismiss the remainder of the Section 1983 claim, and (5) decline to dismiss the remainder of the Human Rights Law claim.  (Report and Recommendation dated March 19, 2007 ("R&R").)  For the reasons set forth below, I adopt these recommendations in part and reject them in part.  Defendants' motion for summary judgment is GRANTED with respect to the Section 1981 claim and the Section 1983 claim, which are dismissed entirely. Defendants' motion for summary judgment is GRANTED with respect to all claims based on alleged failures to promote Edwards.   Defendants' motion for summary judgment is GRANTED with respect to the Human Rights Law claim to the extent that it is based on employer liability. Defendants' motion for summary judgment is DENIED with respect to the claim of an allegedly hostile work environment, except that it is GRANTED as to Defendant Smosky and, to the extent that it is based on the Human Rights Law, as to Huntington.  Defendants' motion for summary judgment is DENIED with respect to the claim of unlawful retaliation.

I.      **Background**

Because Defendants move for summary judgment, this court must view the evidence in the light most favorable to Plaintiff and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of Plaintiff.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995).  Even in a fact-intensive employment discrimination case, however, the court

will not accept as fact mere allegations lacking evidentiary support. <u>Abdu-Brisson v. Delta Air Lines</u>, 239 F.3d 456, 466 (2d Cir. 2001).[1]

Edwards, an African-American, has been employed by the Town of Huntington ("Huntington") since 1986, has worked in Huntington's Department of General Services ("DGS") since 1996, and has been a Grade 13 Carpenter in DGS from 1999 to the present. (Peckham 56.1 St. ¶¶ 1-2; Edwards 56.1 Resp. to Peckham ¶ 1; Huntington 56.1 St. ¶ 3; Edwards 56.1 Resp. to Huntington ¶ 1.) From 1999 until late 2002, Edwards was directly supervised by George Clemens, a foreman who in turn was supervised by Defendant Richard Smosky. (Huntington 56.1 St. ¶¶ 7-8; Edwards 56.1 Resp. to Huntington ¶ 3.) When Clemens retired, he was replaced by Defendant Robert Peckham, who directly supervised Edwards on a *de facto* basis beginning in October 2002 and on a formal basis, after being promoted, beginning in July 2003. (Peckham 56.1 St. ¶ 3; Edwards 56.1 Response to Peckham ¶ 1; Huntington 56.1 St. ¶ 11; Edwards 56.1 Resp. to Huntington ¶ 5.) Additional facts are set forth below where relevant.

## II.    Legal Standards

Edwards alleges that Huntington and DGS violated Title VII and all Defendants violated the Human Rights Law, Section 1981, and Section 1983 by (1) denying Edwards equal terms,

---

[1] Many facts characterized in the R&R as undisputed are supported by citations to the Complaint rather than to evidence in the record; in addition, the R&R states that the court "must accept as true" allegations in the Complaint when considering a motion for summary judgment. (<u>See</u> R&R at 3-5, 14, 20.) When responding to a motion for summary judgment, the non-moving party – in this case, Plaintiff – "may not rest upon . . . mere allegations or denials[.]" Fed. R. Civ. P. 56(e). Instead, the non-moving party, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> It follows that courts are prohibited from relying on mere allegations when deciding whether to grant summary judgment. "[U]nsupported allegations do not create a material issue of fact." <u>Weinstock v. Columbia University</u>, 224 F.3d 33, 41 (2d Cir. 2000).

conditions, and privileges of employment on the basis of his race, (2) subjecting Edwards to a hostile work environment, and (3) retaliating against Edwards after he complained about this disparate treatment and hostile environment.  (Compl. ¶¶ 28-43.)

## A.    Standard of Review

Defendants have filed timely objections to Judge Tomlinson's recommendations that I decline to dismiss claims based on the allegedly hostile work environment and retaliation.  I must therefore consider *de novo* the recommendations to which they object.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Edwards, however, has not objected to any of Judge Tomlinson's recommendations.  The period for doing so has expired.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Therefore, with respect to any recommendation that I dismiss a claim in whole or in part, I "need only satisfy [my]self that there is no clear error on the face of the record in order to accept the recommendation."  Advisory Committee Notes to Fed. R. Civ. P. 72(b) (1983 Addition); see also Covey v. Simonton, 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007) (Garaufis, J.); CSI Inv. Partners II, L.P. v. Cendant Corp.,180 F. Supp. 2d 444, 447 (S.D.N.Y. 2001).

## B.    Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), *i.e.*, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "A fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law.

An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz, 258 F.3d at 69 (citations and quotation marks omitted).

Defendants, because they are the moving parties, bear the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If they satisfy this burden, then Plaintiff, the non-moving party, bears the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (citations and quotation marks omitted); see also Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmovant can create a genuine issue of material fact only by citing competent, admissible evidence. Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999).

In employment discrimination cases, district courts must be "especially chary in handing out summary judgment . . . because in such cases the employer's intent is ordinarily at issue." Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996). "Employers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law." Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999) (citations omitted). Direct evidence of discrimination is therefore not required. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) ("an employer who discriminates against its employee is unlikely to leave a well-marked trail"). However, as a general rule, "the salutary purposes of summary judgment – avoiding protracted, expensive and

harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d. Cir. 1985).

### C. Employment Discrimination and Retaliation

As a general matter, employment discrimination claims brought pursuant to the Human Rights Law, Section 1981, and Section 1983 are evaluated under the standards that apply to Title VII cases. <u>See</u> <u>Schiano v. Quality Payroll Systems, Inc.</u>, 445 F.3d 597, 609 (2d Cir. 2006); <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 69 (2d Cir. 2000); <u>Sorlucco v. New York City Police Dept.</u>, 888 F.2d 4, 6-7 (2d Cir. 1989); <u>Rumala v. New York City Transit Authority</u>, No. 02-CV-3828 (SLT) (KAM), 2005 WL 2076596, *11 n.13 (E.D.N.Y. Aug. 26, 2005); <u>Jessamy v. City of New Rochelle, New York</u>, 292 F. Supp. 2d 498, 511 n.15 (S.D.N.Y. 2003).

Title VII prohibits racial discrimination by providing that it is unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). Title VII prohibits retaliation by providing that it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a).

## III. Analysis

### A. Section 1981

Edwards' Section 1981 claim must be dismissed because he asserts a cause of action under Section 1983. <u>Jett v. Dallas Independent Sch. Dist.</u>, 491 U.S. 701, 735 (1989) ("the

express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of rights guaranteed by § 1981 when the claim is pressed against a state actor"); Anderson v. Conboy, 156 F.3d 167, 176 n.17 (2d Cir. 1998); Perry v. Metropolitan Suburban Bus Authority, 319 F. Supp. 2d 338, 341-342 (E.D.N.Y. 2004).

### B. Hostile Work Environment

Judge Tomlinson recommends that I decline to dismiss Edwards' Complaint to the extent that it is based on an allegedly hostile work environment. (R&R at 12-23.) Because Defendants object, I will consider this issue *de novo*. I conclude that Judge Tomlinson's recommendation is correct, and I therefore adopt it with respect to this issue.

In order to prevail on a Title VII claim based on an allegedly hostile work environment, a plaintiff must show (1) that the harassment was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment" and (2) "a specific basis for imputing the conduct creating the hostile work environment to the employer." Feingold v. New York, 366 F.3d 138, 149-150 (2d Cir. 2004) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) and Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)). I will consider each element in turn.

### 1. Sufficiently Severe or Pervasive Harassment

The Second Circuit has explained that "[p]roving the existence of a hostile work environment involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Feingold at 150

(citation and quotation marks omitted).  When determining whether an employee was subjected to a hostile work environment, a court must consider, among other factors, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."  Id. (citation and quotation marks omitted).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.  However, a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace."  Id. (citation and quotation marks omitted).

Edwards' claim of a hostile work environment is based primarily on his allegation that Peckham made numerous "offensive racial comments" in the presence of Edwards and other employees between January 1, 2003 and December 5, 2003.  (Compl. ¶ 12.)  In his Complaint, Edwards identified ten such comments and alleged that Peckham made even more.  (Id.)  Judge Tomlinson, citing these allegations, recommends that the claim of a hostile work environment be resolved at trial rather than on summary judgment.  (R&R at 20.)

This court agrees that ten comments over eleven months may give rise to a claim of a hostile work environment because a jury may find that such conduct constitutes "a steady barrage of opprobrious racial comments."  Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997) (twelve racially offensive comments over twenty months may constitute a hostile work environment).  This court cannot, however, adopt the recommendation regarding this issue because it assumes the truth of allegations in the Complaint.  (See supra at 3 n.1; R&R at 13-15.)  This court must therefore review the record in order to determine if the evidence of a hostile work environment is sufficient to withstand summary judgment.

At his deposition, Edwards testified that he heard Peckham say, in 2003, while Peckham was apparently Edwards' *de facto* supervisor (an issue discussed in greater detail *infra* in part III.B.2), that Caucasians work better than Blacks; that Blacks are "spear-chuckers," a term that Edwards testified Peckham used "frequently"; that black ink on white paper and black lettering on white signs represent "the only time black is on top of white"; that Edwards was the first Black person Peckham allowed to ride in his car; that Black people conform to pernicious stereotypes by eating watermelon, chicken, and spareribs; that Edwards could work at Peckham's home as a lawn jockey; and that Caucasian employees should thank an African-American employee for the day off they receive on Martin Luther King, Jr. Day. (Edwards Dep. Tr. at 137-47.) Based on this testimony and Second Circuit's decision in Schwapp, I find that a reasonable juror could conclude that Peckham's harassment was "sufficiently severe or pervasive to alter the conditions of [Edwards'] employment and create an abusive working environment." Feingold, 366 F.3d at 149-150.

### 2. Imputing Conduct to the Employer

Defendants argue that Peckham was Edwards' co-worker rather than supervisor when he made many of the comments just cited, and that Edwards' claims based of a hostile work environment should therefore be evaluated under the standard set forth in Howley v. Town of Stratford, 217 F.3d 141 (2d Cir. 2000). (Huntington and Smosky Objections at 9-10.) In that case, the Second Circuit held that "[w]hen the source of the alleged harassment is a co-worker, the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or [that] it knew, or in the exercise of reasonable care should have known, about the

harassment yet failed to take appropriate remedial action." <u>Howley</u> at 154 (citations and quotation marks omitted).

Defendants' argument fails. It depend on their assertion that "[i]t is undisputed that Mr. Peckham was not promoted to a foreman position . . . until July 2003." (Huntington and Smosky Objections at 9-10.) But Peckham himself has testified that he and Edwards "were co-workers in the Department of General Services until in or about October 2002, when Mr. Peckham began working out-of-title as a foreman[.]" (Peckham 56.1 St. ¶ 3; <u>see also</u> Edwards. Dep. Tr. at 14.) Peckham's *de facto* promotion more or less coincided with the retirement of the foremen whom Peckham would later formally replace. (Huntington 56.1 St. ¶ 10.) The record would therefore permit a reasonable juror to conclude that Peckham supervised Edwards in fact if not in title throughout the period in which Peckham allegedly made the statements described above. For the purpose of resolving this motion, I will treat Peckham's statements as those of a supervisor. <u>DeWitt v. Lieberman</u>, 48 F. Supp. 2d 280, 288-289 (S.D.N.Y. 1999) (where, on a motion for summary judgment, there was a question of fact as to whether an individual exercised authority over plaintiff "tantamount to that of a supervisor's authority such that he could be considered her 'de facto' supervisor," the court assumed for the purpose of deciding the motion that the individual was in fact a supervisor).

Rather than applying <u>Howley</u>, I must therefore evaluate Edwards' claim using the rule governing harassment by a supervisor: "[W]hen a supervisor wields the authority delegated to him by an employer . . . to further the creation of a discriminatorily abusive work environment, the supervisor's conduct is deemed to be that of the employer, and the employer's liability for that conduct is absolute." <u>Murray v. New York University College of Dentistry</u>, 57 F.3d 243,

249 (2d 1995). Based on the evidence in the record, a reasonable juror could conclude that

Peckham's conduct was wielded by virtue of authority delegated to him by Huntington and,

therefore, that the second element of Edwards' hostile-work-environment claim is satisfied.

For the foregoing reasons, this court adopts, with one caveat, the recommendation that it

decline to dismiss Edwards' claims based on his allegations of a hostile work environment. The

caveat is that Edwards has pointed to no evidence in the record suggesting that Smosky engaged

in any conduct contributing to a hostile work environment. The claim of a hostile work

environment is therefore dismissed as to Smosky.

### C.    Failure to Promote

A plaintiff asserting a Title VII claim based on disparate treatment, such as a failure to

promote, bears the burden of establishing a *prima facie* case of discrimination. McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Demoret v. Zegarelli, 451 F.3d 140, 151 (2d

Cir. 2006). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to

assert a legitimate, nondiscriminatory reason for the challenged action. McDonnell Douglas at

802; Demoret at 151. If the defendant does so, the plaintiff then bears the burden of establishing

by a preponderance of the evidence that the nondiscriminatory reason is in fact a pretext for

discrimination. McDonnell Douglas at 804; Demoret at 151.

In order to establish a *prima facie* claim of discrimination based on a failure to promote, a

plaintiff must show that (1) he is a member of a protected class, (2) he applied for promotion to a

position for which he was qualified, (3) he was rejected for the position, and (4) the employer

kept the position open and continued to seek applicants. Mauro v. S. New England Telecomms.,

Inc., 208 F.3d 384, 386 (2d Cir. 2000). In order to satisfy the second and third elements, which

are at issue in this case, a plaintiff must show that he "applied for a specific position or positions and was rejected therefrom, rather than merely asserting that . . . he generally requested promotion." Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998).[2]

### 1.    Recommendation of Dismissal

Judge Tomlinson recommends that I dismiss Edwards' Complaint to the extent that it is based on Huntington's failure to promote Edwards to (1) the position of Labor Crew Leader (Foreman) II in DGS, posted in June 2003 (*i.e.*, the position filled by Peckham in July 2003) and (2) the position of Labor Crew Leader I in Huntington's Department of Environmental Waste Management ("DEWM"), posted in February 2004.  (R&R at 30.)  Edwards has not objected to this recommendation.  I will therefore review it for clear error on the face of the record.

I find no such error.  This recommendation was based in part on undisputed evidence that Edwards failed to apply for either position even though both were publicly posted.  (Id.; Baisley 6/28/06 Aff. ¶¶ 5-12; Cavanagh 6/28/06 Aff. ¶¶ 3-7.)  Judge Tomlinson therefore correctly concluded that Edwards cannot state a *prima facie* case of discrimination based on either of these positions.  For that reason, I adopt the recommendation that I dismiss all claims based on the alleged failure to promote Edwards to these positions.

### 2.    Recommendation Against Dismissal

Judge Tomlinson recommends that I decline to dismiss Edwards' Complaint to the extent that it is based on Huntington's failure to promote Edwards to the positions of (1) Labor Crew Leader I in DGS, posted in April 2005, (2) Labor Crew Leader II in the Department of Public

---

[2] This requirement does not apply if "the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them." Mauro at 387.

Safety ("DPS"), posted in March 1999, and (3) Labor Crew Leader I in DGS, posted in 1996.[3]

Judge Tomlinson reasons that "[i]n light of the conflicting sworn testimony provided as to these three positions . . . there is an issue of fact as to whether Plaintiff applied for these three positions." (R&R at 30-32.) Defendants object to that recommendation, which I therefore review *de novo*. I will address each position in turn.

### a.    April 2005

Defendants do not dispute that Edwards applied for, but did not receive, any of the three Labor Crew Leader I positions in DGS that were posted in April 2005. (Baisley 6/28/06 Aff. ¶¶ 15-17.) Those position were filled by two Caucasians and one African-American. (Id. ¶ 17.)

One of the three positions was for a foreman position at Crab Meadow Golf Course. (Cavanagh 6/28/06 Aff. ¶ 12.) That position, which was filled by a Caucasian, required specialized knowledge regarding golf-course care and maintenance. (Id. ¶ 13.) Only one out of the twenty-eight applicants possessed such knowledge; Edwards was not that one. (Id. ¶¶ 14-15.) Because Edwards does not dispute this fact, he cannot satisfy the second element of his *prima facie* case, which requires him to show that he was qualified for the position. I therefore reject the recommendation that I decline to dismiss claims based on this position.

Another of the three foreman positions posted in April 2005, which called for work in one of Huntington's parks, was filled by an African-American whom Defendants deemed more qualified than Edwards. (Id. ¶ 18; Baisley 6/28/06 Aff. ¶ 17.) The fact that Edwards and the

---

[3] Defendants suggest that Judge Tomlinson intended to recommend that I decline to dismiss claims based on only two of these positions. (Huntington and Smosky Objections at 21.) This court disagrees. In any event, Defendants have submitted testimony regarding on all three positions, and this court will therefore address all three.

person who was hired are of the same race does not necessarily preclude Edwards from stating a *prima facie* claim of discrimination. <u>Brown v. Henderson</u>, 257 F.3d 246, 253 (2d Cir. 2001). Assuming *arguendo* that Plaintiff has stated such a claim, the burden would then shift to Defendants to assert a legitimate, non-discriminatory reason for their decision. They have done so, explaining that the other person was hired "based upon his qualifications and relevant experience, in particular his prior experience working for [Huntington] at its Dix Hills park."[4] (Cavanagh 6/28/06 Aff. ¶ 18.) Edwards has offered no evidence that this explanation is pretextual, which it is his burden to do. While racially offensive statements made by Peckham, described *supra* at 9, may suggest discriminatory intent by Peckham, Peckham played no role in deciding who would fill this position (<u>id.</u> ¶ 18; Baisley Aff. ¶ 17) and there is no basis in the record to believe that the reason asserted by the decisionmaker, Thomas Cavanagh, was pretextual. I therefore reject the recommendation that I decline to dismiss claims based on this position.

The third of the three positions posted in April 2005 was also for a foreman to work in one of Huntington's parks. It was filled by a Caucasian. (Cavanagh 6/28/06 Aff. ¶ 17; Baisley 6/28/06 Aff. ¶ 17.) Defendants assert that the person hired to fill the position was chosen "based upon his qualifications and relevant experience, in particular his extensive experience in the landscaping field." (Cavanagh 6/28/06 Aff. ¶ 17.) I therefore find that Edwards has stated a

---

[4] I find that this allegation is better characterized as a legitimate, nondiscriminatory reason for hiring the other person than as a fact that precludes proof of the qualification element of Edwards' *prima facie* claim. Whereas the first of the foreman positions posted in April 2005 required a special skill that Edwards lacked and another applicant possessed, which means that Edwards was not qualified for that position, there is no evidence that the position now being discussed required such a specialized skill or that Edwards was unqualified for it (as opposed to merely being less qualified than another applicant).

*prima facie* claim based on this position and that Defendants have carried their burden of offering a legitimate, non-discriminatory reason for their failure to promote Edwards to this position. Edwards therefore bears the burden of showing that this reason is pretextual. Edwards offers no evidence of pretext. Again, it was Cavanagh, not Peckham, who decided not to hire Edwards for this position. (Id. ¶ 17.) Had Peckham been the decisionmaker, I would consider permitting a jury to decide whether the decision was made for a discriminatory reason. Because, however, there is no evidence from which to infer that Cavanagh harbored any discriminatory motive, there is no way a reasonable juror could conclude that the reasons offered for declining to promote Edwards to this position are pretextual. I therefore reject the recommendation that I decline to dismiss claims based on this position.

For the reasons just stated, all claims based on the failure to promote Edwards to the three Labor Crew Leader I positions in DGS that were posted in April 2005 are dismissed.

### b.     March 1999

Defendants claim that Edwards did not apply for the position of Labor Crew Leader II in DPS, which was posted and filled in March 1999. (Baisley 10/3/06 Aff. ¶¶ 7-8.) Edwards, however, testified that he formally applied for that position. (Edwards 10/11/06 Aff. ¶ 4.) I therefore find that a legitimate dispute as to a material fact precludes this court from deciding, on summary judgment, that Edwards cannot satisfy his initial burden of stating a *prima facie* claim based on this position. I further note that Edwards testified that Lisa Baisley, on whose testimony Defendants rely to support the assertion that Edwards never applied for this position, "has a history of denying that minorities such as myself applied for positions, when in fact those individuals had applied for the positions in question." (Id. ¶ 6.) He then goes on to identify three

such individuals.  (Id.)  It is therefore possible that a reasonable juror would conclude that Edwards in fact applied for this position, in which case the juror would find that Edwards stated a *prima facie* claim.[5]

Because Defendants rely on their assertion that Edwards failed to state a *prima facie* claim regarding this position, they do not offer any evidence of a legitimate, nondiscriminatory reason for not promoting Edwards to this position.  They do, however, assert that Edwards and Huntington entered an agreement in 1999 that released any and all claims Edwards may have had against Huntington as of the date it was executed.  (Huntington and Smosky Objections at 7.)  This assertion appears to be undisputed.  (Edwards Dep. Tr. at 12-13.)  Because the agreement was executed in May 1999 (id.), Edwards may not bring a claim based on conduct that occurred before that time.  His claim based on this position must therefore be dismissed on summary judgment.

### c.    April 1996

Defendants claim that Edwards did not apply for the position of Labor Crew Leader I in DGS that was posted in April 1996.  (Baisley 10/3/06 Aff. ¶¶ 12-13.)  Edwards, however, testified that he formally applied for that position.  (Edwards 10/11/06 Aff. ¶ 5.)  As with the March 1999 position, there exists a genuine issue of material fact that precludes this court from deciding, on summary judgment, that Edwards cannot state a *prima facie* claim based on this

---

[5] Edwards' assertion about Baisley, which is a serious one, appears to have been raised for the first time at a relatively late stage in this litigation.  The court has no basis to presume that the assertion is false, however, and for the purpose of deciding the present motion assumes that it is true.  However, if after trial the court determines that the assertion lacked a basis in fact and was offered in bad faith, merely to defeat summary judgment, the court will consider imposing sanctions on Edwards, who has offered the assertion in a sworn affidavit under penalty of perjury, and on his counsel.

position (particularly in light of his allegation regarding Baisley). However, this claim is precluded by virtue of the May 1999 agreement between Edwards and Huntington.

*      *      *

I reject the recommendation that I decline to dismiss claims based on Huntington's failure to promote Edwards to the three Labor Crew Leader I positions in DGS posted in April 2005, the position of Labor Crew Leader II in DPS posted in March 1999, and the position of Labor Crew Leader I in DGS posted in 1996. Those claims are dismissed.

### D.      Retaliation

The McDonnell Douglas burden-shifting framework applies to retaliation claims. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998). In order to state a *prima facie* claim of retaliation, an employee must cite evidence sufficient to permit a rational trier of fact to find that (1) "he engaged in protected participation or opposition under Title VII," (2) "the employer was aware of this activity," (3) "the employer took adverse action against the plaintiff," and (4) "a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." Kessler v. Westchester County Dept. of Social Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).

Judge Tomlinson recommends that I decline to dismiss Edwards' retaliation claim but limit the facts that Edwards may offer at trial to prove the "adverse action" element of retaliation. (R&R at 28.) Defendants object to that recommendation to the extent that it does not dispose of the retaliation claim in its entirety; Edwards has not objected to that recommendation at all. I will therefore review recommendations not to dismiss *de novo* and recommended limitations for clear error on the face of the record.

Before addressing Judge Tomlinson's recommendations, I address two preliminary issues. First, I find that Edwards' retaliation claim is not precluded by his failure to include it in his EEOC charge. My reason is that the retaliation claim is "reasonably related" to the claims based on the failure to promote Edwards and an allegedly hostile work environment, which are addressed in his EEOC charge. Williams v. New York City Housing Authority, 458 F.3d 67, 70-71 (2d Cir. 2006) (conduct is "reasonably related" to conduct complained of in an EEOC charge "if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made"); Treglia v. Town of Manlius, 313 F.3d 713, 719 -720 (2d Cir. 2002) ("[W]hen an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed 'reasonably related' to the original EEOC filing.") (quoting Owens v. New York City Housing Authority, 934 F.2d 405, 410-11 (2d Cir. 1991)); Butts v. City of New York Dept. of Housing Preservation, 990 F.2d 1397, 1402 (2d Cir. 1993) ("[R]equiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination.").

Second, I find that Edwards can satisfy the first, second, and fourth elements of his *prima facie* claim of unlawful retaliation. He can satisfy the first and second elements because Defendants acknowledge that in December 2003, Edwards filed a formal grievance complaining about, *inter alia*, the racially charged comments Peckham made in his presence. (Cavanagh 6/28/06 Aff. ¶¶ 20-21.) Although the grievance was initially denied, it was later reconsidered in an investigation conducted by Huntington's EEO Complaint Review Committee ("Committee").

18

(Id. ¶¶ 23-25.)  The Committee identified both Peckham and Smosky as "respondents" to its

investigation.  (Id., Ex. A.)  At the conclusion of the investigation, the Committee issued a report

finding that Peckham had made "racially insensitive remarks" in violation of Huntington's

policies.  (Id. ¶¶ 26-27, Ex. A.)  Peckham was disciplined as a result.  (Id. ¶ 29.)  These

undisputed facts strongly suggest that both Peckham and Smosky, as well as other authority

figures in Huntington, had personal knowledge of Edwards' grievance.  In addition, Defendants

acknowledge that Edwards filed an EEOC charge in May or June 2004.  (Baisley 9/8/06 Aff., Ex.

1.)  Edwards can satisfy the fourth element of a *prima facie* claim because the allegedly

retaliatory actions occurred shortly after Edwards filed his grievance and EEOC charge, a fact

that would permit a reasonable juror to infer causation.[6]  Quinn v. Green Tree Credit Corp., 159

F.3d 759, 769 (2d Cir. 1998) ("Proof of the causal connection can be established indirectly by

showing that the protected activity was closely followed in time by the adverse action.").

### 1.       Recommendation of Dismissal

Judge Tomlinson recommends that I dismiss Edwards' claim that the following actions

constitute unlawful discrimination: (1) scrutiny of Edwards' work and job performance that

exceeded the scrutiny to which employees who have not complained of discrimination are

subjected, (2) requiring Edwards, but not employees who have not complained of discrimination,

to provide doctors' notes to explain absences, (3) denying Edwards the chance to work overtime

---

[6]  To the extent that any allegedly retaliatory action occurred before Edwards filed his
grievance, Edwards will be precluded from offering it as evidence of retaliation (as opposed to
evidence of a hostile work environment).  Defendants correctly note that Edwards has testified to
numerous facts without specifying whether they support his claim of retaliation.  (Huntington and
Smosky Objections at 16 (citing Edwards 8/14/06 Aff.).)  Edwards must, in his proposed pre-trial
order, identify which actions he will offer to prove a hostile work environment, which he will
offer to prove retaliation, and which, if any, he will offer to prove both.

hours and in positions deemed "out of class," privileges granted to employees who have not complained of discrimination, (4) telling Edwards to "get back to work," an instruction not directed toward similarly situated employees who have not complained of discrimination, (5) forbidding Edwards from using his mobile phone during work hours, a prohibition not imposed on employees who have not complained of discrimination, and (6) failing to provide Edwards with tools and equipment provided to employees who have not complained of discrimination.[7] (R&R at 25-27 (citing evidence in the record).) Judge Tomlinson's recommendation is based on her finding that "[t]he alleged reprimands and close scrutiny at issue here [] do not rise to the level of adverse employment action." (Id. at 27.)

To satisfy the third element of a *prima facie* case – "adverse action" – a plaintiff must prove "that a reasonable employee would have found the challenged action materially adverse," *i.e.*, that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006) (citation and quotation marks omitted). The challenged action need not affect the terms and conditions of employment in order to constitute unlawful retaliation. Id. at 2411-14; Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 227 (2d Cir. 2006). Instead, retaliation can be

_____

[7] Defendants claim that "in his deposition, Plaintiff alleged that the *only* alleged retaliatory conduct . . . consisted of Mr. Smosky allegedly telling him to get back to work[.]" (Huntington and Smosky Objections at 15 (citing Edwards Dep. Tr. at 108-10; see also id. at 16.) The portion of Edwards' deposition testimony cited in support belies Defendants' claim. At his deposition, Edwards was asked, "[Y]ou cite as an example [of retaliation] that [Smosky] told you to get back to work . . . and he doesn't do the same thing with other employees?" (Edwards Dep. Tr. at 108.) Edwards answered, "Right." (Id.) He then answered a series of questions about the circumstances surrounding that incident. (Id. at 109-10.) He was not asked whether that incident was his only evidence of retaliation, nor did he testify that it was. Defendants are therefore wrong to argue that testimony offered by Edwards via affidavit contradicts his deposition testimony. (Huntington and Smosky Objections at 15-16.)

actionable even when the alleged adverse action "had not effected any change in [the employee's] salary, benefits, job title, grade, or hours of work[.]" Kessler, 461 F.3d at 201.[8]

A reasonable juror could find "that a reasonable employee would have found the challenged action materially adverse." Burlington Northern, 126 S. Ct. at 2415. In other words, a reasonable juror could find that these actions, particularly when considered collectively, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. That is all Edwards must show in order to prove an adverse action. Edwards can therefore state a *prima facie* claim of retaliation based on these actions.

Defendants offer a legitimate, non-retaliatory reason for the second action just listed, requiring Edwards to provide doctors' notes to explain his absences. The reason is Huntington's Abusive Sick Policy, which provides, "If an employee is placed on the Abusive Sick List" – as Edwards was (Edwards 8/14/06 Aff. ¶ 3) – "any sick time taken must be justified by a letter from their physician describing the illness, the date of treatment, and the date you are fit to return to work." (Smosky 9/8/06 Aff., Ex 1 ¶ 6.) Defendants have therefore satisfied their burden, and Edwards must show that this reason is pretextual. He has done so, testifying that other employees on the Abusive Sick List were not required to provide letters from their physicians.

---

[8] Although the R&R correctly identifies and describes the portions of Burlington Northern just cited, it also contains the following observation: "Courts in this District have found that to qualify as an adverse employment action, employer conduct must subject plaintiff to a materially adverse change in the terms and conditions of [his] employment." (R&R at 23-24, 27 (quotation marks omitted).) That is precisely the rule that the Supreme Court considered and rejected in Burlington Northern. All six cases cited in support of this rejected rule were decided before Burlington Northern and so are not viable precedent. (Id. at 27 (citing cases).) This court will evaluate Edwards' retaliation claim under the rule announced in Burlington Northern.

(Edwards 8/14/06 Aff. ¶ 3 (naming six such employees).)  This action may therefore be considered by the jury.

This court rejects the recommendation that it dismiss the retaliation claim to the extent that it is based on the six actions listed *supra* at 19-20.  Edwards may present evidence of those six actions to the jury in support of his retaliation claim.[9]

### 2. Recommendation Against Dismissal

Judge Tomlinson recommends that this court decline to dismiss Edwards' retaliation claim to the extent that it is based on Defendants (1) criticizing Edwards for taking a long time to perform certain work, (2) selecting an employee less qualified than Edwards to teach a class about obtaining a commercial driver's license, for which that employee earned $7,000, (3) selecting employees less senior than Edwards to serve as acting foremen, and (4) not providing Edwards training provided to others. (R&R at 28 (citing evidence in the record).)  Defendants object, arguing that these actions to not satisfy the "adverse action" element of retaliation.  That argument is rejected pursuant to Burlington Northern.  Defendants also argue that these actions should be precluded from evidence because they contradict Edwards' deposition testimony, which allegedly indicated that Edwards would offer only one action into evidence in support of his retaliation claim.  As discussed *supra* at 20 n.7, this argument is rejected because it is based on a mischaracterization of Edwards' testimony.  I therefore adopt the recommendation that I decline to dismiss the retaliation claim to the extent that it is based on these four actions.

---

[9]  As explained *supra* at 19 n.6, to the extent that any of those actions occurred before Edwards filed his grievance, Edwards will be precluded from offering it as evidence of retaliation (as opposed to evidence of a hostile work environment).

### E. Section 1983

Judge Tomlinson recommends that I dismiss the remainder of the Section 1983 claim on the ground that Edwards has not alleged that he was harmed by a "policy" of Huntington and cannot show that either Peckham or Smosky qualifies as "senior personnel," and therefore cannot show that the conduct of which he complains constitutes state action. (R&R at 32-35 (citing Monell v. Dep't of Social Servs of the City of New York, 436 U.S. 658 (1978) and Krulick v. Board of Educ. of New York City, 781 F.2d 15 (2d Cir. 1986)).) Because Edwards has not objected to this recommendation and it is not clearly erroneous on the face of the record, it is adopted.

### F. Human Rights Law

Judge Tomlinson recommends that this court decline to dismiss the claim that Peckham and Smosky aided and abetted a violation of the Human Rights Law. (R&R at 35-36.) To the extent that Defendants' objection to this recommendation is identical to their objection regarding Title VII claim (i.e., to the extent that Defendants argue that no unlawful conduct occurred), it is sustained and rejected to the same extent as in the Title VII context.

Defendants also object on the ground that Huntington did not encourage, condone of, or approve the conduct giving rise to the claim of an allegedly hostile work environment. (Huntington and Smosky Objections at 13.) That objection is sustained. In contrast to Title VII, "the use of racial slurs and insults by a supervisor without the knowledge or acquiescence of the employer does not constitute an unlawful discriminatory practice actionable under the State Human Rights Law." Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 311 (2004). While Peckham's status as a de facto supervisor may cause Huntington to be liable under Title VII for

an allegedly hostile work environment, it cannot, absent more, give rise to liability by Huntington under the Human Rights Law. Because Huntington responded to Edwards' grievance by disciplining Peckham, no reasonable juror could find that Huntington "encourag[ed], condon[ed], or approv[ed]" of Peckham's conduct. Id.

## IV. Conclusion

For the reasons set forth above, the Report and Recommendation issued by Judge Tomlinson on March 19, 2006 is adopted in part and rejected in part. More specifically, I rule as follows:

(1) Defendants' motion for summary judgment is GRANTED with respect to (a) the Section 1981 claim, (b) the Section 1983 claim, (c) all claims based on any alleged failure to promote Edwards, and (d) the Human Rights Law claim to the extent that it is based on employer liability.

(2) Defendants' motion for summary judgment is DENIED with respect to claims based on (a) an allegedly hostile work environment (except that it is GRANTED as to Defendant Smosky with respect to all statutes invoked by Edwards and to Huntington to the extent that it is based on the Human Rights Law) and (b) alleged retaliation.

(3) The parties shall inform the court within ten days of the date of this Order whether they consent to a trial before Judge Tomlinson pursuant to 28 U.S.C. § 636(c).


SO ORDERED.

Dated: July 11, 2007                                _/s/ Nicholas G. Garaufis_
       Brooklyn, N.Y.                            NICHOLAS G. GARAUFIS
                                           United States District Judge